### Seth T. Sawyer *et al.*

#### *v.*

### William P. Bradshaw, impleaded, etc.

*Filed at Mt. Vernon June 16, 1888.*

1. Fraudulent conveyance—*deed of trust to one creditor for future advances—whether fraudulent as to others.* A being indebted to B and C in the sum of $1500, gave to the latter a deed of trust on a lot worth about $650, to secure a note of $3000. B bought the lot at the trustee's sale for one dollar, and paid $381 to redeem the lot from a prior sale. B and C testified that the deed of trust was given to secure a debt of $1500, and that the balance was for future advances: *Held*, in the absence of proof of a purpose to protect the property from the other creditors of A, that the dif-

ference between the apparent and the real amount of the incumbrance was not enough, of itself, to stamp the deed of trust as fraudulent as against the other creditors of A.

2. SAME—*sale of property back to debtor as evidence of fraud.* The fact that a creditor, at the request of his debtor, purchased personal property belonging to the latter, at a sale on execution, with his own money, and afterward sold the same to the debtor at the price paid for it, with interest on the money advanced and a charge for time and trouble, fails to show any fraud on the part of such creditor, as against the rights of other creditors.

3. SAME—*creditor taking assignment of prospective decree—as evidence of fraud in the taking of a prior deed of trust.* A creditor took a deed of trust from his debtor purporting to secure a debt of $3000, when in fact the real debt was only $1500, the parties contemplating future advances at the time. The property conveyed was not worth the amount of the actual indebtedness. Two days after the date of this deed the debtor assigned to the same creditor an anticipated decree in a pending suit, which, when recovered, amounted to $1290. This assignment was further security for the indebtedness, and the balance of the decree was applied to the payment of certain other debts of the assignor, absorbing nearly the whole amount: *Held,* that at most this was but evidence tending to show fraud against creditors in the making of the trust deed, but was quite insufficient, of itself, to show such fraud.

4. SAME—*evidence—declarations of debtor after parting with his title, not admissible against his grantee.* A, after giving a deed of trust on his lot to B and C, turned the property over to D, another creditor, who leased the same, and collected four months' rent. When the fifth month's rent fell due, the tenant informed D that he was notified not to pay him any more rent. Thereupon D applied to A, who told him that he had let B and C take the property to prevent S., another creditor, from selling it,—that S. claimed $900 of him, and he would not pay it if he could help it. At this conversation B and C were not present, and they had purchased the property at the trustee's sale: *Held,* that the statements of A were not competent evidence against B and C, to show that their deed of trust was made in fraud of creditors.

5. Had the property been let by A to D after the sale under the deed of trust, and the statements been made when A was in possession, claiming and treating the property as his own, they might, perhaps, have been admissible in evidence.

6. SAME—*party seeking to set aside, confined to grounds set out in bill.* On bill to set aside a deed of trust and a deed made thereunder, on the ground the same is fraudulent as to creditors, the complainant can not take advantage of the fact that the notice of the trustee's sale was in violation of the statute, in not setting forth the correct amount due.

WRIT OF ERROR to the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of Madison county; the Hon. W. H. SNYDER, Judge, presiding.

Mr. R. S. SAWYER, and Messrs. WISE & DAVIS, for the plaintiffs in error:

Plaintiffs in error had the right, under the statute, whether their judgment was a lien or not, to treat the deed of trust from Brown to Metcalfe & Bradshaw, and deed to Bradshaw from the trustee, as fraudulent and void, because made to hinder, delay and defraud creditors, and did so treat them; and by their so doing, the title to lot 39, in controversy, vested in appellees on March 8, 1881, by virtue of their judgment, execution and sheriff's deed. *Gould* v. *Steinburg,* 84 Ill. 170; *McKinney* v. *Farmers' Nat. Bank,* 104 id. 180.

The sheriff's deed, when made, related back to the day of sale, (in plaintiff's case to November 29, 1879,) in order to cut off subsequent purchasers. *Fell* v. *Price,* 3 Gilm. 186.

The note and deed of trust from Brown to Metcalfe & Bradshaw, for $3000, bearing date April 6, 1878, is fraudulent and void, because given for too large a sum. *Mitchell* v. *Sawyer,* 115 Ill. 650; *Wooley* v. *Fry,* 30 id. 158; *Upton* v. *Craig,* 57 id. 257.

Metcalfe & Bradshaw, with intent to hinder, delay and defraud plaintiffs and other creditors of Brown, were holding in their names all of Brown's property, real and personal, and yet Brown was getting the benefit of it all, and so a secret trust is established. *Mitchell* v. *Sawyer,* 115 Ill. 650; *Moore* v. *Wood,* 100 id. 451; *Power* v. *Alston,* 93 id. 587; *Jones* v. *King,* 86 id. 225.

William P. Bradshaw, being a fraudulent grantee, is held by law to be a trustee for the benefit of plaintiffs in error, as creditors, and in disposing of the property to Mrs. Clark, is responsible for the value of the same, with interest. Bump on Fraud. Con. 567; *Steere* v. *Hoagland,* 50 Ill. 377.

The court should have allowed plaintiffs $800, at least, as the value of lot 39 on March 8, 1881.

Plaintiffs were entitled to interest at six per cent per annum from March 8, 1881, on the value of lot 39 on that day, to the day of decree. Bump on Fraud. Con. 567; *Steere* v. *Hoagland,* 50 Ill. 377; *Jones* v. *Lloyd,* 117 id. 597.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

On November 29, 1879, Seth T. Sawyer and Robinson S. Sawyer purchased, at sheriff's sale, under an execution upon a judgment in their favor against George T. Brown, for $160 and costs of suit, recovered at the February term, 1879, of court, lot 39, in penitentiary plat addition to Alton, as the property of said Brown, and subsequently received a sheriff's deed therefor. On April 6, 1878, said Brown executed to Metcalfe & Bradshaw a deed of trust upon said lot 39, to secure the payment of a note from Brown to Metcalfe & Bradshaw, of even date with the deed of trust, for $3000, payable one year after date, with ten per cent interest. On July 26, 1879, Metcalfe & Bradshaw caused said lot 39 to be sold at public sale, under the deed of trust, for the satisfaction of said note, and at the sale the lot was struck off and sold to Bradshaw for the sum of one dollar, and he received a trustee's deed for the lot. It had previously been sold under an execution against Brown, and on June 21, 1879, Metcalfe & Bradshaw paid $381 in redemption of the lot from the execution sale. On January 21, 1880, Bradshaw sold and conveyed the lot to one Anna S. Clark. On March 6, 1885, the Sawyers filed their bill in chancery in this case, in the circuit court of Madison county, to have set aside the aforesaid deed of trust, trustee's sale and deed, and the deed to Anna S. Clark, as fraudulent and void as against creditors, or if the said Clark was found to be an innocent purchaser of the lot, that then Metcalfe & Bradshaw, or Bradshaw, account to the complainants for the value of the lot.

The circuit court found the deed of trust to have been made in fraud of creditors, that Clark was an innocent purchaser, and decreed that Bradshaw should pay to the complainants $650, as the value of the lot at the time of complainants' sheriff's deed for the same, March 8, 1881. The complainants bring this writ of error for the review of the judgment of the Appellate Court reversing the decree below.

The chief reliance, as showing the deed of trust in question to be fraudulent as against creditors, is upon the fact that the note secured by the deed of trust was given for a larger amount than was due from Brown to Metcalfe & Bradshaw at the date of the note, citing *Wooley* v. *Fry,* 30 Ill. 163, *Upton* v. *Craig,* 57 id. 259, *Mitchell* v. *Sawyer,* 115 id. 650, and Bump on Fraud. Con. 470, as in support of the position.

The testimony of Metcalfe and Bradshaw is, that Brown only owed them about $1500 or $1600 at the time the note and deed of trust for $3000 were given, on April 6, 1878, and on July 26, 1879, the day of the trustee's sale, and that the balance of the note was to secure future advances and services. The mere discrepancy between the amount of the indebtedness and that of the note and deed of trust, should not, of itself, avoid the deed of trust as to creditors. The consequence in that respect depends upon the intent of the transaction, and upon its being calculated to mislead, to their injury, or to hinder and delay creditors.

There was a wide difference in the estimate of value by witnesses, of the lot here concerned, as is usual upon questions of value,—one witness placing his estimate of value as high as $1500. But the complainants, in their bill, state the value of the lot as only being from $500 to $800, and we think the finding of the circuit court of its value as $650 to be quite as high as there was warrant for, from all the evidence in the case. There was no question as to the actual indebtedness to Metcalfe & Bradshaw being as much as $1500. Under such circumstances of the value of the lot and the amount of the real

indebtedness, there was nothing in the property, in any event, for other creditors, but all, and more, was required for the satisfaction of Metcalfe & Bradshaw, and we can not conceive that mis-stating the amount of the incumbrance,—calling it $3000 instead of $1500,—could have had any possible effect, in respect of this property, of misleading other creditors to their prejudice, or of hindering and delaying them in the collection of their debts.    The transaction, of itself, could not denote any purpose to protect the property from other creditors, and there is no evidence in the case from which to draw the inference of such a purpose.    We can not, under the circumstances here, regard the fact of the difference between the apparent and the real amount of the incumbrance as enough to stamp the deed of trust as fraudulent as against creditors.

Brown had given the property over to one Mrs. Johnson, to make from it a debt he was owing her.    She had rented it at ten dollars per month, and received four months' rent.    She testifies, that when the rent for the fifth month came due, her tenant informed her he had received notice not to pay her any more rent, and that on inquiring of Brown as to the cause of this, he told her he had to let Metcalfe & Bradshaw take the house to prevent Mr. Sawyer from selling it,—that Sawyer claimed $900 off him, and he wasn't going to pay it if he could help it.    This statement of Brown is insisted upon as evidencing fraud in the making of the deed of trust.    We do not regard this statement as competent evidence against Metcalfe & Bradshaw.    Had the property been let by Brown to Mrs. Johnson after the sale of it under the deed of trust, and the statement been made when Brown was in possession, claiming and treating the property as his own, it might, perhaps, have been admissible.    (*Jones* v. *King*, 86 Ill. 226.)    But such was not the case here.    The evidence shows that the property was given into the possession of Mrs. Johnson, by Brown, in June, 1879, which was before the sale under the trust deed, and at a time when Brown was properly in the enjoyment of the use

and possession of the property. But subsequent to such sale, on July 26, 1879, Brown is not shown to have had any connection with the property, further than as appears from the conversation above stated, and Mrs. Johnson giving the key of the house to Brown. Mr. Bradshaw says that he took possession of the property as soon as he got the title under the trustee's sale. The statement of Brown, if admissible, does not point to the making of the deed of trust, but relates to the giving of possession of the property to Metcalfe & Bradshaw after the sale of it under the deed of trust.

It is said that Metcalfe & Bradshaw were holding in their names all of Brown's property, real and personal, Brown getting the benefit of it, and so a secret trust is established. All the foundation for this, aside from the matter of this deed of trust, is the insolvent condition of Brown; that Metcalfe & Bradshaw came into the possession of a lot of books and personal property once owned by Brown, which Brown afterward had the benefit of; and that on April 8, 1878, two days after the date of the deed of trust, Brown assigned to Metcalfe & Bradshaw an anticipated decree in a suit pending, and which decree was rendered in Brown's favor on December 12, 1878, for $1290.60, and Brown received the benefit of it. As to the books and personal property referred to, it appears that they had been levied upon under an execution in favor of one Hambleton, against Brown, and that at the execution sale, on June 17, 1877, Metcalfe & Bradshaw, at the request of Brown, bought the property for $280.75, with their own money, and that they afterward sold to Brown the property at what they paid for it, interest and trouble, and delivered the property to Brown, except a writing table, which they kept. We fail to perceive evidence of any fraud in this transaction.

As to the decree assigned, Mr. Metcalfe testifies that the assignment was taken to secure their claim against Brown; that at the time of the assignment there was an outstanding execution of another person against Brown, the amount of which, by

agreement at the time, was to come out of the decree; that the amount of the execution,—$685,—was taken out of the decree, and the balance of the decree was paid to Metcalfe & Bradshaw, of which Brown got the benefit, nearly all of it going to pay debts he then owed. At the most, this is but evidence tending to show fraud toward creditors in the making of the deed of trust, and is quite insufficient, of itself, to show such fraud.

It is objected that the advertisement of sale under the trust deed was in violation of the statute, in not setting forth, in the notice, the correct amount due. It is sufficient to say that the bill contains no allegation in this respect. The sole ground of impeachment of the sale under the trust deed, which is set forth in the bill, is, that the deed of trust was fraudulent as against creditors.

We perceive no sufficient reason for disturbing the judgment of the Appellate Court, and it must be affirmed.

*Judgment affirmed.*